UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SCOTT HIGBEE,                                )       Case No. 26-cv-11827
                                             )       Honorable
                 Plaintiff,                  )
                                             )       **Demand for Jury**
v.                                           )
                                             )
6800 EASTMAN AVENUE, LLC,                    )
                                             )
                 Defendant.                  )
_____)

Ryan T. Kaiser (P79491)
WEILER LAW GROUP, PLC
Attorneys for Plaintiff
5820 Eastman Ave.
Midland, MI 48640
(989) 492-0955
kaiser@weilerlawgroup.com

## <u>VERIFIED COMPLAINT</u>

NOW COMES the Plaintiff, Scott Higbee ("Plaintiff"), by and through undersigned counsel, and for his Verified Complaint against the Defendant, 6800 Eastman Avenue, LLC ("Defendant"), states as follows:

1. Plaintiff, a disabled military veteran, brings this cause of action to vindicate his federally guaranteed right to access places of public accommodation with the assistance of his trained service animal.

2. This lawsuit arises from an incident at the Midland Mall in Midland, MI, which is owned and operated by Defendant, that resulted in a violation of Plaintiff's rights under the Americans with Disabilities Act of 1990 and the Michigan Persons with Disabilities Civil Rights Act.

3. Defendant, through its agents and employees, contacted police and had Plaintiff removed from the premises because of his use of a service animal, an act that is protected under both state and federal law.

**PARTIES**

4. Plaintiff Scott Higbee is a resident of Midland County, Michigan.

5. Defendant 6800 Eastman Avenue, LLC is a limited liability company formed under the laws of Michigan with a principal place of business in Michigan.

6. Defendant owns and operates Midland Mall, located at 6800 Eastman Avenue, Midland, Michigan 48642.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331, as Plaintiff's claims arise under the laws of the United States.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC § 1367 because those claims are substantially related to the federal law claims and arise from the same set of operative facts.

9. This Court has personal jurisdiction over Defendant because Defendant transacts business within Michigan and the events giving rise to this action occurred in Michigan.

10. Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 USC § 1391because a substantial part of the events giving rise to the claims occurred in this District, specifically at Midland Mall in Midland, Michigan, and because Midland County is located within the Eastern District of Michigan.

<u>**STATEMENT OF FACTS**</u>

**Background**

11. Plaintiff Scott Higbee is a disabled veteran who suffers from Post-Traumatic Stress Disorder (PTSD).

12. PTSD is a mental impairment that substantially limits one or more of Plaintiff's major life activities, including mental and emotional functioning, concentrating, thinking, socialization, and communicating.

13. Plaintiff uses a service dog named Darna to assist him with his disability.

14. Plaintiff's service dog is trained to perform tasks specifically related to Plaintiff's PTSD, including recognizing signs of anxiety and distress and helping to remove Plaintiff from stressful situations.

15. Plaintiff's service dog was professionally trained, and the training took place in part at Midland Mall.

16. Plaintiff has undergone back surgery in the past and was advised by his surgeon to walk regularly as part of his physical therapy.

17. Plaintiff regularly visits Midland Mall to walk with his service dog for both physical therapy purposes and mental health benefits, including socialization with other people.

18. Over the past five years, Plaintiff has visited Midland Mall with his service dog over 100 times without incident.

19. Midland Mall displays a placard stating "Service Dogs are Welcome."

**The December 18, 2025 Incident**

20. On December 18, 2025, in the early afternoon, Plaintiff visited Midland Mall with his service dog and his wife Marilyn to take a walk.

21. This was Plaintiff's third visit to the mall in December 2025, following visits on December 7 and December 11, 2025. He was accompanied by his service dog each time.

22. Shortly after entering the mall and walking around a play structure being built in the food court area, Plaintiff was physically grabbed by an individual who he later learned to be Beccah Elizabeth Billmeier.

23. Billmeier approached Plaintiff and asked what Plaintiff was doing there with his dog and stated "pets are not allowed."

24. Plaintiff responded that Darna is his service dog and showed Billmeier his service dog identification.1

25. Plaintiff offered to allow Billmeier to examine his service dog identification more thoroughly.

26. Billmeier became hostile and claimed there is no such thing as a service dog identification.

27. Billmeier then asked Plaintiff, "What is your disability?"

28. Plaintiff informed Billmeier that he has PTSD and that this is the reason for his service dog.

29. Billmeier stated that there is no disability called PTSD and that Plaintiff needed to leave with his "pet."

30. Billmeier also claimed to be a service dog trainer and stated that she has a doctoral degree in service dog training.

31. At this point, due to the hostile and escalating nature of the confrontation, Plaintiff's service dog began performing its trained task of attempting to pull Plaintiff away from the stressful situation.

32. Plaintiff asked Billmeier if she worked at the mall and if she had the authority to ask him to leave.

33. Plaintiff told Billmeier that if she worked at the mall and had authority to ask him to leave, he would comply, but he requested that she provide him with her identification so he could file a proper complaint.

34. Billmeier refused to answer whether she worked at the mall, refused to provide identification, and refused to confirm that she had authority to ask Plaintiff to leave.

35. Plaintiff pointed to another individual approximately 50 feet away who appeared to be training a service dog, demonstrating that service dogs are permitted in the mall.

---

1 While there is no formal service animal registry, organizations that provide formal training for service animals often issue identification cards to help disabled individuals avoid conflict in places of public accommodation by being easily able to identify their service animal.

36. Plaintiff began walking away from Billmeier because he did not want to continue dealing with someone who was being hostile and refusing to identify herself.

37. As Plaintiff walked away, Billmeier followed him and yelled that she was having him arrested.

38. Plaintiff turned around and asked, "For what? All I am doing is walking."

39. As Plaintiff passed a placard in the mall stating "Service Dogs are Welcome," he pointed to it and told Billmeier that unless she could prove she had authority and provide identification, her claims were invalid and she needed to stop making a scene and leave him alone.

40. Billmeier continued to follow Plaintiff through the mall, giving him dirty looks.

41. On Plaintiff's second lap through the mall, a second female employee wearing a T-shirt with the mall logo and the word "Housekeeping" on the back joined Billmeier.

42. Plaintiff stopped and asked the housekeeping employee if she worked at the mall.

43. Plaintiff explained that Billmeier had asked him to leave and stated that he would comply if someone who worked at the mall would provide him with identification so he could later file a complaint.

44. The housekeeping employee did not say anything and moved away from Plaintiff as he approached.

45. Billmeier and the housekeeping employee continued to follow Plaintiff as he walked with his service dog and his wife.

46. Plaintiff walked two more laps through the mall without further incident.

47. At one point, Billmeier told Plaintiff she was going to call the police on him. Plaintiff, out of frustration, stated that he would call the police because the Mall employees were violating his civil rights.

48. When Plaintiff came around the play structure again, he was confronted by a man who claimed to be mall security, but whom Plaintiff recognized as a contractor working on the play structure.

49. The contractor stated that Plaintiff needed to leave and that "we don't want any drama here."

50. Plaintiff told the contractor that he had a valid service dog.

51. Notably, Plaintiff interacted with the contractor the week prior and had a pleasant conversation.

52. At that point, Officer McDonald of the Midland Police Department arrived.

53. Officer McDonald told Plaintiff that he was there to remove Plaintiff from the mall.

54. Plaintiff told Officer McDonald that Billmeier was in violation of his civil rights and was harassing him for having a service dog.

55. Plaintiff attempted to show and hand his service dog identification to Officer McDonald.

56. Officer McDonald stated that he was only there to remove Plaintiff from the mall and that he needed Plaintiff's information.

57. Plaintiff told Officer McDonald that he would not have had to come to the mall if Billmeier or the housekeeping employee had provided identification and confirmed they were authorized to ask him to leave.

58. Officer McDonald took down Plaintiff's information, and Plaintiff left peacefully.

59. As Plaintiff was driving away, Officer McDonald and Billmeier flagged Plaintiff down.

60. Officer McDonald informed Plaintiff that he had been "trespassed" from Midland Mall and was no longer allowed to be a patron.

61. As a result of Defendant and its employees' hostile confrontation and refusal to identify themselves, Plaintiff experienced severe fear and anxiety during the incident.

62. Plaintiff's service dog recognized Plaintiff's distress and attempted to perform its trained task of removing Plaintiff from the stressful situation.

- 6 -

63. Plaintiff has suffered severe emotional distress because of the incident, including ongoing anxiety, humiliation, and embarrassment.

64. Plaintiff has been deprived of the ability to visit Midland Mall, which he had used regularly for over five years for physical exercise and mental health purposes.

65. The loss of access to Midland Mall has negatively impacted Plaintiff's physical and mental health.

66. Plaintiff continues to suffer from the emotional and mental harm caused by Defendants' conduct.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et seq.

67. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein

68. Defendant 6800 Eastman Avenue LLC is a private entity that owns and operates Midland Mall, a shopping center.

69. Midland Mall is a place of public accommodation within the meaning of 42 U.S.C. § 12481 and 28 C.F.R. § 36.104.

70. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102.

71. Plaintiff has PTSD, which is a mental impairment that substantially limits one or more of his major life activities, including mental and emotional functioning, concentrating, thinking, and communicating.

72. Plaintiff uses a service dog as an auxiliary aid to assist him with his disability as defined under 28 C.F.R. § 36.104.

73. On December 18, 2025, Plaintiff visited Midland Mall with his service dog for the purpose of walking and therapeutic exercise.

74. Defendant Midland Mall, through its employee, Billmeier and others, denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Midland Mall.

75. Billmeier confronted Plaintiff about his service dog and asked him prohibited questions about his disability under 28 C.F.R. § 36.302(c)(6) ("A public accommodation may ask if the animal is required because of a disability and what work or task the animal has been trained to perform. A public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal.") (emphasis added).

76. Specifically, Billmeier asked Plaintiff "What is your disability?" rather than limiting her inquiry to the two questions permitted under the ADA: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform.

77. Billmeier stated that there is no disability called PTSD, further demonstrating her discriminatory intent and lack of understanding of disability rights.

78. Billmeier demanded that Plaintiff leave the mall with his "pet," refusing to acknowledge that Plaintiff's dog is a service animal.

79. Billmeier's actions were taken on behalf of Defendant and within the scope of her employment.

80. As a result of Billmeier's conduct, Plaintiff was removed from the mall by police and issued a trespass order.

81. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered and continues to suffer damages, including emotional distress, loss of access to the mall and its services, and loss of therapeutic benefits.

## COUNT II
## VIOLATION OF ARTICLE III OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101, et seq.

82. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

83. Defendant operates Midland Mall, which is a place of public accommodation within the meaning of the Michigan Persons with Disabilities Civil Rights Act ("PWDCA"). MCL 37.1301(a).

84. Plaintiff is a qualified individual with a disability within the meaning of PWDCA.

85. Plaintiff has PTSD, which is a determinable physical or mental characteristic that substantially limits one or more of his major life activities. MCL 37.1103(d).

86. Plaintiff's disability is unrelated to his ability to utilize and benefit from the goods, services, facilities, privileges, advantages, and accommodations of Midland Mall. MCL 37.1103(d)(B).

87. On December 18, 2025, Defendants denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Midland Mall. MCL 37.1302(a).

88. Billmeier confronted Plaintiff about his service dog and asked him prohibited questions about his disability, including "What is your disability?"

89. Billmeier stated that there is no disability called PTSD and demanded that Plaintiff leave the mall with his "pet."

90. Billmeier refused to identify herself as a mall employee or provide identification, creating fear and anxiety for Plaintiff.

91. Billmeier followed Plaintiff through the mall in a hostile and intimidating manner.

92. As a result of Defendant's conduct, Plaintiff was removed from the mall and issued a trespass order.

93. Defendant's denial of access to Plaintiff was based on his disability and his use of a service dog.

94. Plaintiff's disability is wholly unrelated to his ability to walk through the mall and enjoy its facilities.

95. Defendant has failed to implement policies, procedures, and training necessary to ensure compliance with the Michigan Persons with Disabilities Civil Rights Act.

96. As a direct and proximate result of Defendant's violations of PWDCA, Plaintiff has suffered and continues to suffer damages, including emotional distress, loss of access to the mall, and loss of therapeutic benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Scott Higbee respectfully requests that this Court enter judgment in his favor and award him the following relief:

1. Declaratory relief pursuant to stating that Defendants' conduct has unlawfully violated Plaintiff's rights under the Americans with Disabilities Act of 1990 and the Michigan Persons with Disabilities Civil Rights Act;

2. Injunctive relief pursuant to ordering Defendant to immediately remove the trespass order and allow Plaintiff to return to Midland Mall as a patron;

3. Injunctive relief ordering Defendant to develop and implement a policy regarding service animals that complies with the Americans with Disabilities Act and its implementing regulations;

4. Compensatory damages for Plaintiff's emotional distress, including fear, anxiety, humiliation, embarrassment, and mental anguish;

5. Compensatory damages for Plaintiff's loss of access to Midland Mall and the resulting loss of therapeutic benefits, including physical therapy and mental health benefits;

6. An award of attorney's fees and costs; and

7. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

WEILER LAW GROUP, PLC

Dated: 5·20·2026

Ryan T. Kaiser (P79491)
WEILER LAW GROUP, PLC
5820 Eastman Ave.
Midland, MI 48640

Attorney for Plaintiff

## **VERIFICATION**

I, SCOTT HIGBEE, verify under penalty of perjury that I have reviewed the foregoing Complaint, and its contents are true and accurate to the best of my knowledge, information, and belief.

Dated:
20 MAY 2026

Scott Higbee, Plaintiff

- 11 -